In the Matter of THORNTON J. MEACHAM, JR., an Attorney, Respondent. ASSOCIATION OF THE BAR OF THE CITY OF NEW YORK, Petitioner.

First Department, January 30, 1964.

*Raymond P. Whearty* of counsel (*John G. Bonomi,* attorney), for petitioner.

*Leonard Feldman* for respondent.

*Per Curiam.* Respondent had been retained in May, 1954 to prosecute a personal injury action on behalf of one James A. Robinson on the basis of a 40% contingent fee. On September 10, 1954, Robinson executed an affidavit stating that he desired Harry Leff to be substituted as his attorney, and Leff moved for an order of substitution. Before the return day of the motion, respondent settled Robinson's action for $6,841, receiving a $4,500 check payable to Robinson and respondent, and a $2,341 check payable to the Department of Hospitals in satisfaction of its lien. The Referee in this disciplinary proceeding found there was no clear evidence that respondent knew of the motion for substitution of attorneys before the checks had been

issued. However, in support of a cross motion for an order directing Robinson to indorse the $4,500 check, respondent submitted his own affidavit stating that on September 3, 1954 Robinson had authorized a $6,841 settlement. This statement, obviously designed to influence the court's disposition of the motion and cross motion, was false; the offer to settle for $6,841 had not been received until after the date of Robinson's affidavit.

During the pendency of the motions respondent and Leff reached an understanding pursuant to which the motions were withdrawn, respondent applied to the Department of Hospitals for a reduction of its lien, Leff obtained Robinson's indorsement of the $4,500 check and respondent gave Leff an unindorsed certificate of deposit issued by Corn Exchange Bank Trust Company and payable to respondent in the sum of $680. According to Leff's version of the understanding, respondent was to receive 30% and Leff 10% of the settlement proceeds as their respective fees, and the certificate of deposit was given Leff to secure payment of the 10%. According to respondent's version, the certificate of deposit was given to guarantee a reduction of the hospital bill, with the expectation that any fee to Leff would be paid by Robinson out of the reduction or, if the reduction was not granted, out of the proceeds of the certificate of deposit.

The Department of Hospitals granted a $633 reduction on the basis of respondent's representation that he had reduced his fee from 50% to 40%. The representation was false; as above stated, respondent had a 40% retainer. Moreover, respondent represented that any reduction of the hospital bill would inure solely to the benefit of Robinson, although on respondent's own version of his understanding with Leff he expected that the latter would seek to be compensated out of the reduction.

Thereafter, according to respondent, he was informed by an associate of Leff that the certificate of deposit had been lost. Without making any inquiry of Leff whatever, respondent executed an affidavit in which he falsely stated that he had unsuccessfully made diligent search for the certificate of deposit and that it had not been assigned or pledged or deposited under any agreement. Relying on the affidavit, Corn Exchange Bank Trust Company paid respondent the amount of the certificate of deposit. Subsequently Leff sued respondent and the Trust Company on the certificate of deposit and recovered judgment. The judgment was paid by the bank or its surety company, and not until petitioner's Committee on Grievances commenced its hearings did respondent make reimbursement.

That respondent was guilty of the various misrepresentations above recited is clearly established by the evidence. Additionally, if Leff's version of his understanding with respondent is accepted, respondent was also guilty of misconduct toward Leff. The Referee credited Leff's version and in our opinion was justified in doing so on the record before him. Leff, however, had died before the hearings began. A transcript of his examination and cross-examination before petitioner's Committee on Grievances was ruled admissible by the Referee and the ruling was heretofore sustained by this court. Though perhaps unlikely, cross-examination of Leff before the Referee might have produced testimony of benefit to respondent, and in deference to that possibility we are disposed, for the purpose of our disciplinary determination, to minimize the alleged misconduct toward Leff in our consideration of the disposition of these charges. Another issue on which the Referee found respondent culpable related to the authenticity of Robinson's signature on the general release given to consummate the settlement of his action. Here again, without reciting the details of the issue, we deem it proper to exclude it from our determination, since Robinson died before the issue was raised and handwriting experts gave conflicting opinions.

The Referee's finding that respondent issued numerous checks returned for insufficient funds is not contested, and the factors asserted in mitigation may not be accepted (see *Matter of Chartoff,* 16 A D 2d 277).

Respondent was admitted to practice on June 7, 1943. Apparently no other charges had been made against respondent prior to the commencement of this proceeding.

Respondent should be suspended for a period of two years.

Botein, P. J., Valente, McNally, Stevens and Eager, JJ., concur.

Respondent suspended for a period of two years.